CENTER FOR DISABILITY ACCESS
Isabel Rose Masanque, Esq., SBN 292673
Sara Gunderson, Esq., SBN 302582
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
SaraG@potterhandy.com

Attorneys for Plaintiff
Rafael Arroyo, Jr.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Rafael Arroyo, Jr.**, | **Case:** 2:18-CV-00594-FMO-JEM |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES RE: CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| **Robert Golbahar,** in individual and representative capacity as trustee of the Amanda Pavie Golbahar Child's Trust, dated January 28, 2010, and of the Alexis Margaux Golbahar Child's Trust, dated January 28, 2010; **Nick Bhanji;** | Ctrm:    6D (6th Floor)<br>Date:    December 19, 2019<br>Time:    10:00 am |
| Defendants. | Hon. Judge Fernando M Olguin. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES .......................................................... ii

I. PLAINTIFF'S PRELIMINARY STATEMENT ................................ 1

II. PLAINTIFF'S RELEVANT FACTS .............................................. 1

III. PLAINTIFF'S LEGAL DISCUSSION ........................................... 4

   THE LACK OF ACCESSIBLE FACILITIES .................................. 4

     A.  Plaintiff is Disabled ..................................................... 6

     B.  Defendants Own and Operate a Place of Public Accommodation 7

     C.  The Rainbow Cleaners Had Barriers That Were Readily Removed .................................................................. 7

V. PLAINTIFF: REMEDIES ....................................................... 13

VI. PLAINTIFF'S CONCLUSION ................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*
   603 F.3d 666 (9th Cir. 2010) ................................................ 5

*Chapman v. Pier 1 Imports (U.S.) Inc.*
   631 F.3d 939 (9th Cir. 2011) ............................................ 5, 8

*Cullen v. Netflix, Inc.*,
   880 F.Supp.2d 1017 (N.D. Cal. 2012) ................................. 12

*Moeller v. Taco Bell Corp.*

   816 F.Supp.2d 831 (N.D. Cal. 2011) .................................................. 5

*Molski v. M.J. Cable, Inc.*,

   481 F.3d 724 (9th Cir. 2007) ....................................................12, 14

*Rush v. Denco Enterprises, Inc.*,

   857 F. Supp. 2d 969 (C.D. Cal. 2012)............................................. 8

**Statutes**

2010 Standards § 208.2.4 ........................................................................... 8

42 U.S.C. § 12102(2)(A)........................................................................6, 7

42 U.S.C. § 12188(a) ................................................................................. 6

42 U.S.C. §§ 12183(a)(2) .......................................................................... 6

Cal. Civ. Code § 55.56(a) .......................................................................13

Cal. Civ. Code § 55.56(b) .......................................................................13

Cal. Civ. Code § 55.56(e) .......................................................................13

Civ. Code § 51 (f) ...................................................................................12


**Other Authorities**

1991 Standards § 4.1.2(5) .......................................................................... 8

1991 Standards § 4.1.2(5)(b)...................................................................... 8

28 C.F.R. § 36.304(b) ..............................................................................11

CBC § 1129B.4.......................................................................................... 9

CBC § 11B-502.2 ...................................................................................... 9

CBC § 11B-502.3.3.................................................................................... 9

Department of Justice, Technical Assistance Manual on the American

   with

    Disabilities Act (BNA) §§ III-4.4100 (1991) ..................................... 7

# I. PLAINTIFF'S PRELIMINARY STATEMENT

Plaintiff, who is paraplegic, has brought this action because Defendant ('Robert Golbahar') has failed to provide compliant handicap parking at the Rainbow Cleaners. Because of this lawsuit, the Defendant promptly set about to remedy those violations. Unfortunately, however, Defendant's efforts fell short and the parking is still not compliant.

In this motion, Plaintiff is seeking a ruling that his rights were violated under the Unruh Civil Rights Act, a single statutory penalty of $4,000, and an Order requiring Defendants to make the parking at the Rainbow Cleaners accessible per the ADA. Plaintiff respectfully requests this Court grant his motion.

# II. PLAINTIFF'S RELEVANT FACTS

Plaintiff Rafael Arroyo, Jr. is paraplegic; he cannot walk and uses a wheelchair for mobility. (PF #1, Joint Evidentiary Appendix ("JEA") Ex. 2, page 7, ¶ 2). Mr. Arroyo drives a specially equipped van with a ramp that deploys from the passenger side of the van to accommodate his wheelchair. (PF #2, JEA Ex.2, page 7, ¶3). Mr. Arroyo has a Disabled Person Parking Placard issued to him by the California Department of Motor Vehicles. (PF #3, JEA Ex. 2, page 8, ¶4 and JEA Ex.8, page 58). The Rainbow Cleaners located at or about 1015 N. Aviation Blvd., Manhattan Beach, California. (JEA Ex. 2, page 8, ¶5; PF #4).The Rainbow cleaners is a business establishment and place of public accommodation. (PF #5). Defendant Robert Golbahar is, and was in December 2017, the owner of the property on which the Rainbow Cleaners is located. Further, he is the trustee of the Amanda Pavie Golbahar Childs Trust and Alexis Margaux Golbahar Trust (AKA "Child's Trusts"). Both the trust owns the property on which the

1

Rainbow Cleaners located (PF #7, JEA: Ex.6, pg.40, line 1-7 and 14-20; Ex.7, pg.53, line 6-22). Defendant Nick Bhanji is, and was in December 2017, the owner and operator of the Rainbow Cleaners (PF #8; JEA Ex.6, pg.40, line 9-13 and 21-26; Ex.7 pg.53, line 21-22). Parking spaces are one of the facilities, privileges and advantages offered by the Defendant to the customers of the Coffee Shop. (PF #9).

On December 13, 2017 Mr. Arroyo went to the Rainbow cleaners to have some items tailored and mended. (PF #10, JEA Ex. 2, page 8, ¶4 Ex.2, pg.8, ¶5-6 and JEA Ex.4, pg.13). As he pulled in to park, he found that there was not a single van accessible parking space available for disabled persons. (PF #11, JEA Ex.2, pg.8, ¶7 and JEA Ex.4, pg.13-14). Instead, there was a standard handicap parking space and narrow access aisle, reserved for smaller cars that do not need an eight-foot access aisle. (PF #12, JEA Ex.2, pg.8, ¶8 and JEA Ex.4, pg.13,14). Mr. Arroyo needs a van accessible parking space with an eight foot access aisle in order to deploy his wheelchair ramp. (PF #13, JEA Ex.2, pg.8, ¶9). Because there was no van accessible parking space or access aisle, he could not park safely and he was deterred from patronizing the Rainbow cleaners. (PF #14, JEA Ex.2, pg.8, ¶10). This caused Mr. Arroyo difficulty, discomfort and frustration. (PF #15, JEA Ex.2, pg.8, ¶11).

When Plaintiff's counsel's investigator, Evens Louis, inspected the Rainbow Cleaners subsequent to Plaintiff's visit, he found that there were approximately 14 off street parking spaces, one of which was reserved for use by persons with disabilities. (PF #17, JEA Ex.3, pg.12, ¶4 and JEA Ex.5, pg.18-32). None of the parking was reserved as van accessible handicapped parking. (PF #17, JEA Ex.3, pg.12, ¶5 and Ex.5, pg.18-32). Further, the signpost was 38 inches high and was obstructed by plants. (PF #18, JEA Ex.3, pg.12, ¶6 and Ex.5, pg.18-32).

1    The Rainbow Cleaners is a convenient place for Mr. Arroyo to
2   have clothing tailored, mended and cleaned when he's in the Manhattan
3   Beach area. (PF #19, JEA Ex.2, pg.8, ¶13). He would like the ability to
4   safely and independently park and access the rainbow cleaners. (PF # 20,
5   JEA Ex.2, pg. 8 & 9, ¶14). Once the violations are removed, he plans to
6   visit the rainbow cleaners on a regular basis. (PF #21, JEA Ex.2, pg.9,
7   ¶15).
8    On November 14, 2018, pursuant to this Court's 'Order re.
9   Summary Judgment Motions', Plaintiff and Defendant filed a Joint brief
10  covering all parties' summary judgment motions. (PF #22). On July 5,
11  2019, the Court granted partial summary judgment to Plaintiff as to
12  liability. (PF #23). Per the Court's Order, there remained only "one issue
13  of material fact which prevents this court from awarding summary
14  judgment to plaintiff." (PF #24). Specifically, the only issue of material
15  fact remaining was that "defendant alleges that if he has to convert the
16  parking lot's disabled space into a van-accessible space, he would be
17  required to reduce the number of parking spaces 'allowable under the
18  City of Manhattan Beach's parking ordinance requirements.'" (PF #25).
19  The Court held this sole issue of material fact to "raise[] the question of
20  whether the creation of a van-accessible space is a readily achievable
21  alteration." (PF #26).
22   Five days later, defense counsel sent Plaintiff's counsel "a series
23  of photographs depicting a portion of the subject property showing that it
24  was now striped to allow for Van Accessible Handicap Parking in
25  conformity with the measurements required by the 2010 Standards of the
26  ADA…"(PF #27, Ex.9, Email and Photos from Defense). Per defense
27  counsel, "The critical issue has been fully remediated." (PF #28, Ex.9,
28  Email and Photos from Defense). Pursuant to the changes made by

3

1  Defendant to the parking, Plaintiff's Counsel filed a Notice of Indication
2  of Mootness on September 20, 2019. (PF #29).
3       As recently as November 8, 2019 Plaintiff's counsel's Investigator
4  Mr.  Randall  Marquis,  Investigator  for  Plaintiff  conducted  an
5  Investigation of the subject business, Rainbow Cleaners. (PF #30, JEA
6  Ex. 10, pg. 71¶ 3, JEA Ex. 11 pgs. 72-78). He found that the van parking
7  space reserved for use by persons with disabilities appeared to have been
8  recently re-striped and re-painted. (PF #31, JEA Ex. 10, pg. 71 ¶ 5, JEA
9  Ex. 11 pgs. 72-78). However the van parking space was still not
10 compliant. (PF #32, JEA Ex. 10, pg. 71 ¶¶ 6-8, JEA Ex. 11 pgs. 72-78).
11 The parking stall measured 109 inches in width while the access aisle
12 measured 58 inches in width. These dimensions do not comply with
13 requirements of a van accessible parking space. (PF #33, JEA Ex. 10, pg.
14 71 ¶¶ 6 & 7, JEA Ex. 11 pgs. 72-78). Moreover the access aisle had a
15 running slope pf 2.7% gradient and cross slope of 3.1% gradient. (PF
16 #34, JEA Ex. 10, pg. 71 ¶ 8, JEA Ex. 11 pgs. 72-78).

17

18         **III. PLAINTIFF'S LEGAL DISCUSSION**
19          **THE LACK OF ACCESSIBLE FACILITIES**
20      Under Title III of the Americans With Disabilities Act of 1990
21 ("ADA"), the general rule is that: "No individual shall be discriminated
22 against on the basis of a disability in the full and equal enjoyment of the
23 goods, services, facilities, privileges, advantages, or accommodations of
24 any place of public accommodation by any person who owns, leases (or
25 leases to), or operates a place of public accommodation." 42 U.S.C. §
26 12182(a). The term "discrimination" can be misleading. The ADA
27 applies not just to intentional discrimination but to thoughtlessness and
28 indifference:

1
2
3
4
5
6
7
8
9
10
11
12
13

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors— that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

14
15
16

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

17
18
19
20
21
22
23
24
25
26
27
28

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman*, 631 F.3d at 945. This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by

5

persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);
2. The defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;
3. The defendants must be responsible parties, i.e., owners, operators, lessors or lessees. *Id.*;
4. The defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove. 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);
5. Plaintiff must have actually encountered this non-removed and unlawful barrier. 42 U.S.C. § 12188(a).

As discussed below, Mr. Arroyo's civil rights were violated because Defendant failed to provide accessible parking at the Rainbow Cleaners. Plaintiff will discuss each element, seriatim.

### A.      Plaintiff is Disabled

Mr. Arroyo has severe mobility impairments. He cannot walk and uses a wheelchair for mobility. (PF #1, JEA: Ex. 2, page 5, ¶ 2-4 and Ex.8, page 58).

There can be little doubt that he fits the qualification under the Americans with Disabilities Act as a person with a disability. 42 U.S.C.

1  § 12102(2)(A) (defining a physical impairment substantially affecting a
2  major life activity as qualifying as a disability).  Given Mr. Arroyo's
3  inability to walk, this is not a genuine issue.

4

5  **B.      Defendants Own and Operate a Place of Public**
6  **        Accommodation**

7       The Rainbow Cleaners is a public accommodation, which the
8  defendant admits (PF #5). Further, laundromats and dry cleaners are
9  specifically mentioned as places of public accommodation by statute.
10 (See 42 U.S.C. § 12181(7)(F)). The Defendants own and operate this
11 place of public accommodation. (PF #6 & 7). The Defendants, therefore,
12 have an obligation to comply with the anti-discrimination provisions of
13 Title III of the Americans with Disabilities Act.

14

15 **C.      The Rainbow Cleaners Had Barriers That Were**
16 **        Readily Removed**

17      The ADA defines "discrimination" as a failure to remove
18 architectural barriers where it is readily achievable to do so. 42 U.S.C. §
19 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but
20 is defined in the Technical Assistance Manual:

21
22      III-4.4100: What is an architectural barrier? Architectural
23      barriers are physical elements of a facility that impede
24      access by people with disabilities. These barriers include
25      more than obvious impediments such as steps and curbs that
26      prevent access by people who use wheelchairs.

27 Department of Justice, Technical Assistance Manual on the American
28 with Disabilities Act (BNA) §§ III-4.4100 (1991). Case law is more

7

specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any element in facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.*

### *Lack of accessible parking*

The lack of accessible parking constitutes a barrier. Under the 1991 Standards, any business that provides parking spaces must provide parking spaces marked as reserved for persons with disabilities. 1991 Standards § 4.1.2(5). One in every eight of those accessible parking spaces, but not less than one, must be a "van" accessible parking space, *i.e.*, having an eight foot (96 inch wide) access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six of those accessible parking spaces, but not less than one, must be "van" accessible, i.e. having an eight foot access aisle, or alternatively, having a stall measuring 132 inches in width with a 60 inch adjacent access aisle. 2010 Standards § 502.2. (The Plaintiff recognizes that, technically, either the 1991 Standards or the 2010 Standards govern in this case, but not both simultaneously. However, both Standards are cited to demonstrate that it does not matter which Standard is applied because the parking did not comply with either Standard.)

8

Furthermore, to qualify as a reserved accessible parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches (18 feet) in length. CBC § 11B-502.2

Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id.* Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id.* Additionally, the words "NO PARKING" shall be painted on the ground within each 8-foot… loading and unloading access aisle. This notice shall be painted in white letters no less than 12 inches… high and located so that it is visible to traffic enforcement officials." CBC § 11B-502.3.3.

Here, the Rainbow Cleaners did not have a single van accessible parking space on the date of Plaintiff's visit on December 13, 2017. (PF#

9-12; JEA Ex. 2, pg. 8 ¶4-7; JEA: Ex. 4 (Photos of Arroyo), pgs. 14-16; JEA, pg. 12, Ex. 3 ¶ 4.).

On November 14, 2018, pursuant to this Court's 'Order re. Summary Judgment Motions', Plaintiff and Defendant filed a Joint brief covering all parties' summary judgment motions. (PF #22). On July 5, 2019, the Court granted partial summary judgment to Plaintiff as to liability. (PF #23). Per the Court's Order, there remained only "one issue of material fact which prevents this court from awarding summary judgment to plaintiff." (PF #24). Specifically, the only issue of material fact remaining was that "defendant alleges that if he has to convert the parking lot's disabled space into a van-accessible space, he would be required to reduce the number 'allowable under the City of Manhattan Beach's parking ordinance requirements.'" (PF #25). The Court held this sole issue of material fact to "raised the question of whether the creation of a van-accessible space is a readily achievable alteration." (PF #26).

Five days later, defense counsel sent Plaintiff's counsel "a series of photographs depicting a portion of the subject property showing that it has now been striped to allow for Van Accessible Handicap Parking in conformity with the measurements required by the 2010 Standards of the ADA…"(PF #27, Ex.9, Email and Photos from Defense). Per defense counsel, "the critical issue has been fully remediated." (PF #28, Ex.9, Email and Photos from Defense). Pursuant to the changes made by Defendant to the parking, Plaintiff's Counsel filed a Notice of Indication of Mootness on September 20, 2019. (PF #29).

As recently as November 8, 2019 Plaintiff's counsel's Investigator Mr. Randall Marquis, Investigator for Plaintiff conducted an Investigation of the subject business, Rainbow Cleaners. (PF #30, JEA Ex. 10, pg. 71 ¶ 3, JEA Ex. 11 pgs. 72-78). He found that the van

parking space reserved for use by persons with disabilities appeared to have been recently re-striped and re-painted. (PF #31, JEA Ex. 10, pg. 71 ¶ 5, JEA Ex. 11 pgs. 72-78). However the van parking space was still not compliant. (PF #32, JEA Ex. 10, pg. 71 ¶¶ 6-8, JEA Ex. 11 pgs. 72-78). The parking stall measured 109 inches in width while the access aisle measured 58 inches in width. These dimensions do not comply with requirements of a van accessible parking space. (PF #33, JEA Ex. 10, pg. 71 ¶¶ 6 & 7, JEA Ex. 11 pgs. 72-78).

Moreover the parking space is not compliant because of excessive slopes. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. The access aisle had a running slope pf 2.7% gradient and cross slope of 3.1% gradient. (PF #34, JEA Ex. 10, pg. 71 ¶ 8, JEA Ex. 11 pgs. 72-78).

In any event, providing and maintaining accessible parking is readily achievable. Even a cursory review of the Code of Federal Regulations indicates that this type of action, i.e., providing accessible parking, is of the type identified as likely to be readily achievable. 28 C.F.R. § 36.304(b)(18).

More importantly, as shown in the photographs provided by Defense counsel, Defendant has made changes to the parking to address the allegations in Plaintiff's complaint. Although the parking space is still not fully compliant, the question about whether doing so is readily achievable has been definitively answered. *See Wilson v. Pier 1 Imports*

11

(US), Inc., 439 F.Supp.2d 1054, 1069 (E.D. Cal. 2006) ("Given that the barrier has already been cured, the court must find that it was readily achievable, and thus that it violated the ADA and subsequently the Unruh Act.").

New facts, unknown to the Court at the time of its partial denial of Plaintiff's earlier Motion for Summary Judgment, show that the sole issue of material fact is no longer at issue. Thus, there is no "question of whether the creation of a van-accessible parking space is readily achievable." Defense's barrier removal moots the readily achievable issue.

In sum, the Defendant failed to remove barriers that were readily removed and, therefore, violated the Plaintiff's rights under the ADA.

## IV. PLAINTIFF: THE LACK OF COMPLIANT PARKING IS UNLAWFUL UNDER CALIFORNIA LAW

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f).   "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731. As discussed above under section "IV", the defendants violated the ADA. Thus, there has been a per-se violation of Unruh.

# V. PLAINTIFF: REMEDIES

1
2      The Plaintiff seeks both injunctive relief and statutory damages.
3  Under the ADA, the plaintiff is entitled to injunctive relief. 42 U.S.C. §
4  12188(a). Such injunctive relief "shall include an order to alter facilities
5  to make such facilities readily accessible to and useable by individuals
6  with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2).
7  "Allegations that a plaintiff has visited a public accommodation on a
8  prior occasion and is currently deterred from visiting that
9  accommodation by accessibility barriers establish that a plaintiff's injury
10  is actual or imminent." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th
11  Cir. 2008). "We have found actual or imminent injury sufficient to
12  establish standing where a plaintiff demonstrates an intent to return to
13  the geographic area where the accommodation is located and a desire to
14  visit the accommodation if it were made accessible." *D'Lil v. Best*
15  *Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).

16      The Rainbow Cleaners is a convenient place for Mr. Arroyo to
17  have his clothing cleaned when he's in Manhattan Beach. He would like
18  the ability to safely and independently park and access then Rainbow
19  Cleaners. Once the violations are removed, he plans to visit the Rainbow
20  Cleaners on a regular basis and ongoing basis. (PF #19-21, JEA, Ex. 2,
21  pg.8 & 9, ¶13-15). Thus, Mr. Arroyo has standing to seek the fix.

22      Statutory damages can be recovered for a violation of the Unruh
23  Civil Rights Act "if the violation denied the plaintiff full and equal
24  access to the place of public accommodation on a particular occasion."
25  Cal. Civ. § 55.56(a). A denial of full and equal access takes place where
26  a plaintiff "personally encountered" the violation and it resulted in
27  "difficulty, discomfort or embarrassment." Cal. Civ. § 55.56(b). Under
28  the Civil Code, the plaintiff is entitled to recover a statutory penalty for

"each offense" (Cal. Civ. Code § 52(a)) which has been defined as "each particular occasion that the plaintiff was denied full and equal access . . .." Cal. Civ. Code § 55.56(e). A plaintiff can recover for both actual encounters and occasions where personal knowledge of a barrier deterred the plaintiff from attempting patronage. Cal. Civ. § 55.56(b).

Here, Mr. Arroyo personally encountered the access standards. (JEA: Ex.2, pg.8, ¶¶7-8) Mr. Arroyo seeks one penalty. There are no genuine issues in dispute here and the Plaintiff is entitled to the statutory award of $4,000 under the Unruh Civil Rights Act for each of his encounters and any deterrence. "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). Plaintiff seeks an award of $4,000.

## VI. PLAINTIFF'S CONCLUSION

The Plaintiff respectfully requests this Court grant his motion.


Dated: November 15, 2019        CENTER FOR DISABILITY ACCESS


By: */s/ Sara N. Gunderson*
Sara N. Gunderson
Attorneys for Plaintiff