UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL ARROYO, JR.,<br><br>   Plaintiff,<br><br>   v.<br><br>ROBERT GOLBAHAR, IN HIS INDIVIDUAL AND REPRESENTATIVE CAPACITY AS TRUSTEE OF THE AMANDA PAVIE GOLBAHAR CHILD'S TRUST, DATED JANUARY 28, 2010,<br><br>   Defendant. | Case No. 2:18-cv-00594-FLA (JEMx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL** |

1

**RULING**

Following a bench trial in this action on November 2, 2021, the court issues the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1). In sum, the court FINDS Plaintiff Rafael Arroyo, Jr. ("Plaintiff" or "Arroyo") did not visit the Rainbow Cleaners with the requisite bona fide intent to use its services and CONCLUDES Plaintiff lacks standing for relief under the Unruh Civil Rights Act, Cal. Civ. Code § 51. The court, therefore, GRANTS judgment in favor of Defendant Robert Golbahar, in his individual and representative capacity as Trustee of the Amanda Pavie Golbahar Child's Trust, Dated January 28, 2010 ("Defendant" or "Golbahar").

**PROCEDURAL BACKGROUND**

Plaintiff filed this action on January 24, 2018, bringing causes of action for violations of the Americans with Disabilities Act ("ADA") and Unruh Civil Rights Act ("Unruh Act"), based on allegations that Defendant's parking space and related components were not in compliance with the ADA. *See* Dkt. 1. Prior to the bench trial, the court accepted the parties' representations that the ADA claim, and thus the request for injunctive relief, was moot as to all alleged barriers other than the slope of the parking space, which Plaintiff contended was the only remaining aspect not in compliance with the ADA. Trial Tr. 2:11-4:11, 15:1-16:4. However, as the Honorable Fernando Olguin granted summary judgment in Defendant's favor on that issue for lack of notice, Dkt. 49 at 4-5, this court reiterated that the slope of the parking space was already decided and no longer at issue, and declined to reconsider Judge Olguin's order. Trial Tr. 2:11-4:11, 15:1-16:4; *see also Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011). Accordingly, only the Unruh Act claim remains for determination.

The parties stipulated in the Final Pretrial Conference Order that "there were no van accessible parking spaces with eight foot access aisles on the passenger side of the vehicle" and further stipulated at the bench trial that the parking space was not in

2

compliance with the ADA on the date of Plaintiff's visit. *See* Dkt. 83 at 3-4; 24:3-22. In his pretrial brief and at the bench trial, Defendant argued Plaintiff lacked standing to pursue his claim under the Unruh Act because he did not have the requisite "bona fide intent" to avail himself of the services of the Rainbow Cleaners. Dkt. 85; Trial Tr. 19:21-21:8. On November 2, 2021, the court proceeded with the bench trial and took evidence concerning Plaintiff's intent when visiting the Rainbow Cleaners. Trial Tr. 22:4-7.

## FACTUAL BACKGROUND

Plaintiff, a resident of South Gate, California, is a paraplegic, cannot walk, and uses a wheelchair for mobility. Dkt 64 (Arroyo Decl.) ¶ 2; Trial Tr. 30:1-2. Plaintiff drives a specially equipped van with a ramp that deploys out of the passenger side of the vehicle. Arroyo Decl. ¶ 3.

On December 11, 2017, Plaintiff drove his daughter to a disability support services orientation in Hawthorne, California, dropped her off, and planned to pick her up after the orientation concluded. Trial Tr. 30:3-8, 31:14-23. Plaintiff testified that the orientation facility in Hawthorne was approximately 20 to 25 minutes by car from his home in South Gate. *Id*. at 39:3-40:9. Plaintiff expected the orientation to last "[b]etween two to four hours." *Id*. at 31:18-20. According to Plaintiff, he went to Rainbow Cleaners while his daughter was completing the orientation "to kill some time," and because he had a Los Angeles Lakers jacket that needed a button fixed. *Id*. at 32:9-13. Plaintiff testified he was driving "in the area" and saw Rainbow Cleaners, an establishment owned or operated by Defendant. *Id*. at 32:16-21. Plaintiff estimated Rainbow Cleaners was five minutes away by car from the orientation facility and 25 to 30 minutes by car from his home. *Id*. at 39:3-40:9.

Plaintiff arrived at Rainbow Cleaners at approximately 1:00 p.m. to 1:30 p.m., pulled into a designated disabled parking space, and attempted to deploy his side ramp but could not do so because barriers prevented its deployment. *Id*. at 32:25-33:6,

40:22-41:3. Because he was unable to deploy his ramp, Plaintiff abandoned his attempt to visit Rainbow Cleaners and repair his jacket. Arroyo Decl. ¶ 9.

## THE UNRUH ACT AND STANDING

In California, "[t]wo overlapping laws, the Unruh Civil Rights Act ([Cal. Civ. Code] § 51) and the Disabled Persons Act ([Cal. Civ. Code] §§ 54-55.3), are the principal sources of state disability access protection." *Jankey v. Lee*, 55 Cal. 4th 1038, 1044 (2012). Here, Plaintiff sues only under the Unruh Act, which "broadly outlaws arbitrary discrimination in public accommodations and includes disability as one among many prohibited bases." *Id*. "As part of the 1992 reformation of state disability law, the Legislature amended the Unruh Civil Rights Act to incorporate by reference the ADA, making violations of the ADA per se violations of the Unruh Civil Rights Act." *Id*. (citing Cal. Civ. Code § 51(f)). As explained above, the parties stipulate that Defendant's parking space violated the ADA in the manner Plaintiff alleges.

The Unruh Act, however, contains its own statutory standing requirements. *See White v. Square, Inc.*, 7 Cal. 5th 1019, 1024-25 (2019). Although the California Supreme Court has recognized standing under the Unruh Act "is broad," it has also cautioned that "a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct." *Id*. at 1025 (quoting *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175 (2007)).

Defendant cites *Thurston v. Omni Hotels Mgmt. Corp.*, 69 Cal. App. 5th 299 (2021) and *White*, 7 Cal. 5th 1019, to argue that a plaintiff has the burden of proof in establishing actual possession of a "bona fide intent" to make use of a particular business's services to prevail on a claim for violation of the Unruh Act. Dkt. 85 (Def. Trial Br.) at 2-3. Plaintiff responds that the term "bona fide intent" must be read in the context of the cases using the language and that "[a] plaintiff's motive in visiting a business is irrelevant under both the ADA and [Unruh Act]." Dkt. 87 (Pl. Trial Br.) at 3, 5 (citing *Civil Rights Educ. and Enf't Ctr. v. Hosp. Props. Tr.* ("*CREEC*"), 867 F.3d

4

1093, 1101 (9th Cir. 2017); *Reycraft v. Lee*, 177 Cal. App. 4th 1211 (2009)). After considering the evidence adduced at trial, and the parties' arguments and cited authority, the court agrees with Defendant.

In *White*, the plaintiff alleged the defendant unlawfully discriminated against him based on terms and conditions posted on the defendant's website. *Id*. at 1023-24, 1028. The California Supreme Court held the plaintiff had successfully pleaded sufficient facts to meet the statutory standing requirements because he alleged he was deterred from using the defendant's services when visiting the defendant's website, "reviewed its terms of service with the specific intention to sign up for [the defendant's] services," and ultimately was deterred from doing so because the terms and conditions allegedly discriminated against him. *Id*. at 1028, 1032-33. The Court, however, expressly noted that its analysis was restricted to the four corners of the pleading and cautioned that the defendant would be able to contest the plaintiff's allegations supporting statutory standing at a later stage of the proceedings. *Id*. at 1032 ("Square may argue in a motion for summary judgment or at trial that White did not actually possess a bona fide intent to sign up for or use its services. Our standing analysis is limited to the pleadings, in which White unequivocally alleges his intention to use Square's services.").

In *Thurston*, 69 Cal. App. 5th at 301-02, a visually impaired plaintiff asserted a claim under the Unruh Act, alleging she visited the defendant's hotel reservation website but was unable to make a reservation due to issues with the website's accessibility features. By way of a special verdict, the jury rejected the plaintiff's claim, finding she never intended to make a hotel reservation or ascertain the defendant's prices and accommodations for the purpose of making a hotel reservation. *Id.* at 302. The California Court of Appeal affirmed the verdict, holding the trial court did not err in instructing the jury that the plaintiff was required to show she "'intended' to make a hotel reservation" when she visited the defendant's hotel reservation website. *Id.* at 306-07.

As the *Thurston* court explained, "the [Unruh Act] is confined to discriminations against recipients of the 'business establishment's … goods, services or facilities.' [Unruh Act] claims are thus, 'appropriate where *the plaintiff was in a relationship with the offending organization similar to that of the customer in the customer-proprietor relationship.*'" *Id.* at 306 (citing *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 149 (2021)) (italics added in *Thurston*, quotation marks and citations omitted). Thus, "[b]eyond the pleading stage, if a plaintiff wants to prevail on an Unruh Civil Rights Act claim, he or she must present sufficient evidence to overcome the online defendant's argument that he or she 'did not actually possess a *bona fide intent* to sign up for or use its services.'" *Id*. at 307 (quoting *White*, 7 Cal. 5th at 1032) (italics added in *Thurston*).

In rejecting the plaintiff's arguments to the contrary, the court held that while a plaintiff need not be a client or customer of the covered accommodation or prove intentional discrimination upon establishing an ADA violation, "we do not agree that an Unruh Civil Rights Act claimant's intent or motivation for visiting the covered public accommodation is irrelevant to a determination of the merits of his or her claim." *Id*. at 309. As *Thurston* explained, "'[a] litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on the merits.'" *Id.* (citing *Blumhorst v. Jewish Fam. Servs. of Los Angeles*, 126 Cal. App. 4th 993, 1000 (2005)). Thus, because the Unruh Act requires a claimant to actually suffer discrimination to have standing, a plaintiff must establish a bona fide intent to use the defendant's services to have standing to assert an Unruh Act claim, regardless of whether the plaintiff would be able to prevail on the merits of the claim by establishing a violation of the ADA. *See id.* While *Thurston* is non-binding authority on this court, the court finds the Court of Appeal's analysis persuasive and agrees with its discussion of the Unruh Act.

Plaintiff's cited authority is not persuasive or controlling. *CREEC* is inapposite, as it examined only constitutional standing under Article III for claims brought in

federal court under Title III of the ADA, not statutory standing under the Unruh Act. *See CREEC*, 867 F.3d at 1096, 1102 ("This case presents two questions of constitutional standing to assert claims under Title III of the [ADA], … We [] conclude that motivation is irrelevant to the question of standing under Title III of the ADA."). As Defendant does not contest Plaintiff's Article III standing, *CREEC* is not instructive. *Reycraft*, meanwhile, undermines Plaintiff's argument and supports the proposition that standing under either the Disabled Persons Act ("DPA") or the Unruh Act "is established where a disabled plaintiff can show he or she actually presented himself or herself to a business or public place with the intent of purchasing its products or utilizing its services in the manner in which those products and/or services are typically offered to the public and was actually denied equal access on a particular occasion." *Reycraft*, 177 Cal. App. 4th at 1224; *see id*. at 1218-24 (recognizing standing under the DPA differs from standing under the ADA and affirming trial court's ruling that plaintiff lacked standing since she was "unable to show she actually presented herself to the business, as any other customer or guest would do, with the intent of paying the guest fee in order to gain admittance [to and use the facility]").

The court declines to distinguish *Thurston* on the basis it concerned a disability discrimination claim arising from a defendant's website and Plaintiff's claim here involves a construction-related accessibility barrier. Dkt. 87 at 8-11. *Thurston* did not purport to limit its holding to claims predicated on website accessibility and, indeed, relied on authority concerning construction-related barriers to affirm a bona fide intent requirement. *See Thurston*, 69 Cal. App. 5th at 305-08 (citing, *e.g.*, *Reycraft*, 177 Cal. App. 4th at 1218, 1224-25; *Antoninetti v. Chipotle Mexican Grill, Inc*., 614 F.3d 971, 982 (9th Cir. 2010)). Moreover, *Reycraft* applies the same reasoning to businesses with physical locations. *See Reycraft*, 177 Cal. App. 4th at 1224-25.

Accordingly, the court disagrees with Plaintiff's argument that his motive in visiting Defendant's business is irrelevant under the Unruh Act. *See* Dkt. 87 at 5. As *White*, *Thurston*, and *Reycraft* make clear, a plaintiff suing under the Unruh Act must

allege—and ultimately prove—a bona fide intent to avail himself of the defendant's services to have statutory standing.

## FINDINGS OF FACT

The court finds Plaintiff has not proven, by a preponderance of the evidence, that he visited the Rainbow Cleaners on December 11, 2017 with a bona fide intent to have a button repaired on his jacket, as he claims. *See Earp v. Davis*, 881 F.3d 1135, 1145 (9th Cir. 2018) ("Sitting as fact-finder, the trial court judge is tasked with weighing and making factual findings as to the credibility of witnesses."); *see also* Fed. R. Civ. P. 52(a)(6) ("[A] reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."). Based on evidence adduced at trial, the court finds Plaintiff's testimony–that, after having dropped his daughter off at a training seminar in Hawthorne, he visited Rainbow Cleaners to "kill some time" in the "two to four hours" his daughter would be in training and have his jacket button repaired for pick up on the same day–to not be credible. *See* Trial Tr. 30:3-8, 31:14-23, 32:9-13, 32:16-24.

In addition to Plaintiff's demeanor when testifying, the court takes into account the following considerations in finding Plaintiff's testimony to not be credible. First, the court is not persuaded Rainbow Cleaners was a convenient location for Plaintiff to have his jacket repaired, as he testified in his October 22, 2018 declaration and at trial. *See* Dkt. 27-4 at 8 (October 22, 2018 Arroyo Decl.), ¶ 13 ("The Rainbow Cleaners is a convenient place to have clothing mended or cleaned when I'm in the Manhattan Beach area, which is roughly 25 miles from my house."); *see also* Trial Tr. 38:13-40:9. Plaintiff testified he lived in South Gate, which was approximately 25 miles and "25 or 30 minutes" from Rainbow Cleaners. Trial Tr. at 39:3-40:9. While Plaintiff stated Rainbow Cleaners was a convenient place when he was in the Manhattan Beach area, Plaintiff did not testify or otherwise prove that he was regularly in or around Manhattan Beach, or that he had ever heard of, seen, or attempted to use Rainbow Cleaners before the incident in question. Given the significant distance between

Plaintiff's residence and Rainbow Cleaners, the court does not find Plaintiff's testimony that the location was convenient "when [he was] in the Manhattan Beach area" to be credible.  By contrast, Plaintiff also testified that there were multiple other dry cleaners "[m]uch closer" to his home in South Gate that he had used on prior occasions, that these other dry cleaners were more convenient when he was "in that area," and that he was in the South Gate area "every day." *Id*. at 45:16-48:15.  Given that Plaintiff regularly used other dry cleaner facilities near his residence in South Gate, where he lived and was present every day, the court finds Plaintiff's testimony that he chose to use Rainbow Cleaners because of its convenient location to not be credible.

Second, the court finds Plaintiff's testimony that he believed a dry cleaner would repair the snap on button of his jacket within the two to four hours he expected to wait for his daughter's training session to finish to not be credible.  Plaintiff testified he wanted to inquire about whether his jacket could get fixed "possibly [on] the same date" and that the button requiring repair was a metal "snap on" button. Trial Tr. 32:17-21, 49:17-50:0.  The evidence at trial established that a metal snap on button would require a different repair technique than a typical flat button, with thread sewn into holes, to affix it to an article of clothing.  In the absence of any evidence in the record that this repair would reasonably be completed within the time frame in question, or that Rainbow Cleaners offered or advertised same-day tailoring services, the court assigns no weight to Plaintiff's testimony that he visited Rainbow Cleaners with the belief that the button could be repaired the same day.  Assuming Plaintiff took into account the possibility the repair would require Plaintiff to drop off the jacket and retrieve it on a later date, the court finds Plaintiff's assertion that he visited Rainbow Cleaners with the bona fide intent to repair his jacket to not be credible, especially given the undisputed evidence that Plaintiff visited and used multiple other cleaners within a few miles of his home.

Third, Plaintiff testified he had filed up to 350 lawsuits alleging violations of the ADA, including an estimated 200 actions involving purportedly noncompliant parking spaces, and that he was "pretty familiar" with parking requirements under the ADA.  Trial Tr. 40:13-20.  This evidence cast further doubt on Plaintiff's assertion that he visited the Rainbow Cleaners with the bona fide intent to avail himself of its services, and not for other reasons—such as an intent to inspect the business for possible construction-related accessibility barriers and to file a lawsuit under the ADA and Unruh Act.

## CONCLUSIONS OF LAW

In sum, the court finds Plaintiff lacks standing under the Unruh Act because he failed to present credible evidence at trial that he visited the Rainbow Cleaners with the requisite bona fide intent to use its services.  *See White*, 7 Cal. 5th at 1032; *Thurston*, 69 Cal. App. 5th at 307; *see also Reycraft*, 177 Cal. App. 4th at 1224.

## RULING

For the reasons stated herein, Plaintiff is not entitled to relief under the Unruh Act.  The court GRANTS judgment in Defendant's favor on Plaintiff's sole remaining claim for violation of the Unruh Act.  Defendant shall file a proposed judgment within 21 days of this ruling, which accurately states the court's rulings and complies with all statutory requirements and court rules, including Fed. R. Civ. P. 58.

IT IS SO ORDERED.

Dated: January 3, 2022

FERNANDO L. AENLLE-ROCHA
United States District Judge